# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re:** <br><br> **Hollifield Ranches, Inc.,** <br><br> Debtor. | **Bankruptcy Case No. 10-41613-JDP** |

_____

| | |
|---|---|
| **Sandton Credit Solutions Master Fund III, L.P. as successor in interest to Keybank National Association,** <br><br> Plaintiff, <br><br> vs. <br><br> **Hollifield Ranches, Inc. and its predecessors in interest and its successors in interest, an Idaho corporation; Terry G. Hollifield and Carol J. Hollifield, husband and wife; J.R. Simplot Company a Nevada corporation,** <br><br> Defendants, <br> _____ <br><br> **Hollifield Ranches, Inc.,** <br><br> Counter-Claimant, | **Adv. Proceeding No. 17-08038-JDP** |

MEMORANDUM OF DECISION – 1

**vs.**

**Sandton Credit Solutions Master Fund III, L.P.,**

      **Counter-Defendant.**

_____

# MEMORANDUM OF DECISION RE
# PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS
_____

Appearances:

    Randall Peterman, GIVENS PURSLEY, LLP, Boise, Idaho, Attorney for Plaintiff and Counter-Defendant Sandton Credit Solutions Master Fund III, L.P.

    James Meservy, WILLIAMS, MESERVY & LOTHSPEICH, LLP, Jerome, Idaho, Attorney for Defendant and Count-Claimant Hollifield Ranches Inc.

    Joseph Meier, COSHO HUMPHREY, LLP, Boise, Idaho Attorney for Defendants Carol and Terry Hollifield.

    Sheila Schwager, HAWLEY TROXELL ENNIS & HAWLEY, LLP, Boise, Attorney for Defendant J.R. Simplot Company.

MEMORANDUM OF DECISION – 2

*Introduction*

On August 30, 2017, Sandton Credit Solutions Master Fund III, L.P. ("Sandton") commenced this adversary proceeding against the reorganized debtor Hollifield Ranches, Inc. ("HRI"), Terry G. and Carol J. Hollifield, and J.R. Simplot Company ("Simplot").  Dkt. No. 1.  On October 20, 2017, HRI filed an answer to Sandton's complaint and asserted four counterclaims against Sandton.  Dkt. No. 21.  On October 30, 2017, Sandton filed a motion to dismiss three of the HRI counterclaims ("the Motion").  Dkt. No. 29. HRI objected and responded to the Motion, and Sandton replied.  Dkt. No. 38, 41.

On December 13, 2017, the Court conducted a hearing concerning the Motion, at which counsel for the parties presented arguments.  The Court took the Motion under advisement.  Minute Entry, Dkt. No. 44. Having considered the pleadings, briefs, and parties' arguments, as well as the applicable law, this Memorandum sets forth the Court's reasons for its disposition of the Motion.

MEMORANDUM OF DECISION – 3

### *General Allegations*

On September 9, 2010, HRI filed a chapter 11 bankruptcy petition. Counterclaim ("CC") at 14, Dkt. No. 21. Sandton and Simplot were and are major secured creditors of HRI. On September 5, 2012, the Court confirmed HRI's Sixth Amended Plan of Reorganization ("the Plan") which, among many other terms, restructured treatment of Sandton's and Simplot's existing secured claims against HRI. CC at 14; *see also In re Hollifield Ranches, Inc.*, 10-41613-JDP, Dkt. No. 562, 594. Upon confirmation, the terms of the Plan became binding upon HRI, Sandton, Simplot and all others whose claims were dealt with by the Plan. *See* § 1141(a).

HRI's counterclaims against Sandton are based on the conduct and actions of Sandton ("the Actions") alleged by HRI to have occurred after the Plan was confirmed. As characterized by HRI, Sandton is alleged in the counterclaims to have done the following:

    A.    Sandton filed a complaint against HRI during the period of non-disclosure provided in the Plan;
    B.    Sandton's filing of a complaint against HRI occurred even though HRI was not in default under the Plan;
    C.    Sandton took possession and retained HRI's 2016 farm and

MEMORANDUM OF DECISION – 4

>
> crop proceeds ;
> D. Sandton is attempting to restrain HRI's future operations;
> E. Sandton is attempting to defeat the terms of the Plan without just cause, and
> F. Sandton acted in bad faith to "squeeze" HRI, or in other words, to cause HRI to pay the Sandton debt prior to HRI's completion of the Plan .

CC at 15.

HRI alleges that Sandton's conduct constituted a breach of the terms of the Plan; breached Sandton's covenant of good faith and fair dealing; constituted a tortious interference with HRI's contracts and business relationships; and amounted to actionable bad faith. Other than the counterclaim for breach of contract, Sandton argues that the HRI counterclaims against Sandton fail to state claims upon which relief may be granted, and therefore, they should be dismissed.

### *Motion to Dismiss Standard*

Rule 7012(b) provides that Civil Rule 12(b)(6) is applicable in adversary proceedings. Civil Rule 12(b)(6) provides that, upon motion, a claim may be dismissed for the claimant's failure to state a claim upon

MEMORANDUM OF DECISION – 5

which relief may be granted. The purpose of such a motion is to "test a claim's legal sufficiency." *Beach v. Bank of Am. (In re Beach)*, 447 B.R. 313, 318 (Bankr. D. Idaho 2011) (citing *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). A complaint must plead sufficient facts, that when accepted as true, support a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible so long as it is based on a cognizable legal theory and has sufficiently alleged facts to support that theory. *In re Beach*, 447 B.R. at 318 (citing *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988))).

In ruling on a motion to dismiss, the Court "must accept as true all of the factual allegations" contained in the counterclaim. *Twombly*, 550 U.S. at 572. However, the Court need not do the same for legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Indeed, claimants must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of

MEMORANDUM OF DECISION – 6

action will not do." *Twombly*, 550 U.S. at 555.

*HRI's Counterclaims and Disposition of the Motion*

**A.    The Court's Jurisdiction and Constitutional Authority**

Before dealing with Sandton's challenges to HRI's individual claims, some housekeeping is in order.  In the Motion, Sandton argued that all of HRI's counterclaims should be dismissed because HRI did not comply with Rule 7008 when it failed to state in its counterclaims whether it consented to entry of final orders or a judgment by this Court.  MTD at 7.  While Sandton is correct that such a statement is required, but is missing in HRI's counterclaims, the defect is not fatal to HRI's claims.  At the hearing on the Motion, counsel for both HRI and Sandton acknowledged on the record that this Court does indeed have jurisdiction to entertain and adjudicate the claims and counterclaims in this action under 28 U.S.C. § 1334(b) as "civil proceedings arising in or related to" HRI's bankruptcy case.  In addition, through counsel, both Sandton and HRI expressly consented to the Court's entry of any final orders and a judgment in this action.  While Sandton is correct that HRI's counterclaims therefore

MEMORANDUM OF DECISION – 7

technically deficient under the Rules, in light of the parties statements at the hearing on the Motion, the Court declines to dismiss them on this basis.

**B.     Counterclaim Two – Breach of Covenant of Good Faith and Fair Dealing.**

Sandton does not argue that HRI's Counterclaim One, alleging that Sandton breached the "contract" created with HRI by confirmation of the Plan, should be dismissed.  However, Sandton does target HRI's Counterclaim Two, which alleges that Sandton breached the implied covenant of good faith and fair dealing implicit in the Plan, and thereby impaired the benefit of the Plan to HRI, by taking the Actions.  CC at 15–16.  Moreover, HRI alleges that Sandton, through the Actions, has attempted to coerce HRI into paying Sandton's claim sooner than provided in the Plan.  CC at 16.  Sandton argues that dismissal of Counterclaim Two is appropriate because that "is the appropriate remedy for an implied covenant claim that simply parrots the allegations contained in a companion breach of contract claim."  MTD at 2.  HRI did not address Sandton's "parroting the claim" argument in its briefing.  Resp. at 5.

MEMORANDUM OF DECISION – 8

Counsel for HRI disagreed with Sandton's argument at the hearing on the Motion.

Sandton is correct. The Idaho Supreme Court has commented as follows about claims such as those asserted in HRI's Counterclaim Two:

> "In every contract there is an implied covenant of good faith and fair dealing, which 'requires the parties to perform, in good faith, the obligations required by their agreement.' " *Silicon Int'l Ore, LLC v. Monsanto Co.*, 314 P.3d 593, 607 (2013). A violation of the covenant occurs when either party violates, nullifies or significantly impairs any benefit of the contract. *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 824 P.2d 841, 864 (1991). "The implied covenant of good faith and fair dealing does not create independent obligations, it merely applies to contractual obligations." *Silicon Int'l Ore*, 314 P.3d at 607. "Thus, before a party can breach this covenant there must be a contract." *Id.* "A violation of the implied covenant is a breach of contract. It does not result in a cause of action separate from the breach of contract claims, nor does it result in separate contract damages unless such damages specifically relate to the breach of the good faith covenant." *Saint Alphonsus Diversified Care, Inc. v. MRI Assocs., LLP*, 334 P.3d 780, 794 (2014) (quoting *Idaho First Nat'l Bank*, 824 P.2d at 864).

*Drug Testing Compliance Grp., LLC v. DOT Compliance Serv.*, 383 P.3d 1263, 1272–73 (Idaho 2016).

Even assuming confirmation of the Plan subjected Sandton to an

MEMORANDUM OF DECISION – 9

implied covenant of good faith, something the Court does not here decide, Counterclaim Two will be dismissed because it is premised upon the same conduct by Sandton would constitute the breach of contract alleged in Counterclaim One.  "To hold otherwise would result in a duplication of damages awarded for breach of the same contract."  *Idaho First Nat'l Bank*, 824 P.2d at 864.  However, HRI will be granted leave to amend and supplement this counterclaim if it chooses to do so, assuming it alleges different conduct by Sandton than alleged in Counterclaim supports its claim.

**C.    Counterclaim Three – Tortious Interference with a Contract or Business Relationship**

In Counterclaim Three, HRI alleges that, by taking the Actions, Sandton intentionally interfered with HRI's commitments to, and relationships with, Simplot and other creditors under the Plan. CC at 16. Sandton argues this claim should be dismissed because HRI has failed to allege facts sufficient to establish the requisite elements of a tortious interference claim.  MTD at 2.

MEMORANDUM OF DECISION – 10

### 1. Tortious Interference with Contract

The Idaho Supreme Court has stated that "the torts of intentional interference with prospective economic advantage and intentional interference with contract are similar, and that cases and commentary addressing the two torts often apply interchangeably for proving the common elements." *Cantwell v. City of Boise*, 191 P.3d 205, 215 n. 5 (Idaho 2008). "Tortious interference with a contract has four elements: (1) the existence of a contract; (2) knowledge of the contract on the part of the defendant; (3) intentional interference causing a breach of contract; and (4) injury to the plaintiff resulting from the breach." *Drug Testing Compliance v. Dot Compliance*, 383 P.3d 1263, 1270 (Idaho 2016) (quoting *Bybee v. Isaac*, 178 P.3d 616, 624 (Idaho 2008).

Sandton argues that HRI's counterclaim fails to include sufficient allegations to support the third and fourth elements: that Sandton's alleged interference caused HRI to breach a contract with another party, which in turn caused HRI an injury or damages. MTD at 12. HRI failed to specifically address this argument in its objection to the Motion. Resp. at

MEMORANDUM OF DECISION – 11

5–6.  At the hearing, counsel for HRI argued that, though it has not yet occurred, Sandton, through the Actions, may cause HRI to breach the terms of the Plan in the future.

Because any harm to HRI caused by Sandton is, at this time, conjectural, its claim against Sandton is premature.  Simply put, HRI's Counterclaim Three has not alleged facts sufficient to state a claim against Sandton for the tortious interference with HRI's performance of any contract.  The claim will therefore be dismissed.  Again, leave will be granted to HRI to amend this claim if its so chooses.

### 2. Tortious Interference with a Prospective Economic Advantage

As opposed to interference with an existing contract, in Idaho, a claim for tortious interference with a *prospective* economic advantage requires proof of five elements: (1) the existence of a valid economic expectancy, (2) knowledge of the expectancy, (3) intentional interference inducing termination of the expectancy, (4) the interference was wrongful by some measure beyond the fact of the interference itself, and (5) resulting

MEMORANDUM OF DECISION – 12

damage to the plaintiff whose expectancy has been disrupted.  *Syringa Networks, LLC v. Idaho Dept. of Admin.*, 305 P.3d 499, 508 (Idaho 2013) (quoting *Cantwell v. City of Boise*, 191 P.3d 205, 216 (Idaho 2008)); *Westco Auto Body Supply, Inc. v. Ernest*, 243 P.3d 1069, 1081 (Idaho 2010).  "[A] reasonable inference is that they had knowledge of facts that would lead a reasonable person to understand that an expectancy existed and that their actions would delay and economically harm some entity."  *Highland Enterprises, Inc. v. Barker*, 986 P.2d 996, 1006 (Idaho 1999).

Sandton argues that HRI has failed in the counterclaim to identify even a single prospective advantage or potential contract which Sandton has impaired or damaged as a result of the Actions.  MTD at 14.  HRI's Counterclaim Three alleges that the Actions by Sandton interfered with HRI's performance of the Plan, and with HRI's business relationships with Simplot and other creditors.  CC at 16.  At the hearing on the Motion, its attorney argued that HRI has a valid economic expectancy to successfully complete the Plan, which through the Actions, Sandton has impaired and prevented.  However, counsel for HRI could not identify or explain what

MEMORANDUM OF DECISION – 13

that expectancy may be.  Resp. at 6.

HRI's claim against Sandton will be dismissed because the counterclaim does not adequately allege or identify sufficient details of any "prospective economic advantage" that Sandton has impaired via the Actions, nor any damages suffered as a result by HRI as a result.  While the Court is not prepared to hold that, via the Actions, Sandton has not impaired HRI's "business relationships" with its other creditors, absent more facts, the counterclaim is simply lacking the necessary details to state a compensable claim for relief.  HRI will be allowed to amend this claim if it desires to do so.

**D.     Counterclaim Four – Bad Faith**

Finally, HRI claims that Sandton has, effectively, "sabotaged" the Plan in bad faith by taking the Actions.  CC at 17.  Sandton argues this counterclaim should be dismissed because "bad faith is not a recognized cause of action in Idaho outside of the insurance context."  MTD at 2, Dkt. No. 30 (citing Selkirk Seed Co. v. State Ins. Fund, 22 P.3d 1028.  HRI argues in response that confirmation of the Plan created a relationship between it

MEMORANDUM OF DECISION – 14

and Sandton, as its primary creditor, very similar to that which exists in the insurance context, and thus, Sandton's bad faith conduct is actionable. Resp. at 6.

The Court disagrees with HRI. The Idaho Supreme Court has instructed that, under Idaho law, "it is well settled that failure to perform a contractual duty is not an actionable tort." *Selkirk Seed Co. v. State Ins. Fund*, 22 P.3d 1028, 1031 (Idaho 2000) (citing *Carroll v. United Steelworkers of America*, 693 P.2d 361, 363 (Idaho 1984)). As a narrow exception to this proposition, the Idaho Supreme Court recognized the tort of bad faith in the insurance context because "insurance companies have a duty to act in good faith with the insureds, and that this duty exists independent of the insurance contract and independent of statute." *Bliss Valley Foods, Inc.*, 824 P.2d at 850 (quoting *White v. Unigard Mut. Ins. Co.*, 730 P.2d 1014 (Idaho 1986)). This duty is imposed because of "the unique 'personal' (non-commercial) nature of insurance contracts." *Id.* (quoting *Black Canyon*, 804 P.2d at 904). And because "insurance contracts are invariably fixed, standardized contracts whose terms are not negotiated and are executed in

MEMORANDUM OF DECISION – 15

a non-commercial setting.  The insurer prepare the insurance contract, while the insured seldom, if ever reads—much less understands—the terms of the agreement." *Id.* (quoting *Black Canyon*, 804 P.2d at 905).

Even if a bad faith claim can lie against a party other than an insurer, Counterclaim Four fails to allege facts sufficient to show that, via confirmation of the Plan, HRI and Sandton occupied the requisite status to support such a claim.  The Idaho Supreme Court has observed that  "a commercial transaction, that creates a debtor-creditor relationship, for which both the terms and security for the loan were under negotiation" can not serve as the basis for a bad faith claim  *Id.* (quoting *Black Canyon*, 804 P.2d at 905).  According to the Idaho court, the "bad faith tort, which had its genesis in the peculiar nature of the first-party insurance contract, as explained in *White v. Unigard*, has no application outside the first party insurance context, as we clearly spelled out in the *Black Canyon* case."  *Id.*

The terms of the Plan resulted from the negotiations of the parties and the chapter 11 process as a means of restructuring HRI's contractual obligations with its creditors, including Sandton.  Counterclaim Four will

MEMORANDUM OF DECISION – 16

be dismissed with prejudice, since confirmation of the Plan established a strictly commercial relationship between Sandton and HRI. Therefore, under Idaho law, HRI simply can not assert a bad faith claim against Sandton under the circumstances here.

*Conclusion*

For the reasons set forth above, the Motion will be granted. Counterclaims Two and Three will be dismissed with leave granted to HRI to file amended counterclaims if it chooses to do so. Counterclaim Four will be dismissed with prejudice because amendment would be futile.

Dated: December 18, 2017

Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 17